[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 8208 RE: PLAINTIFF'S MOTION TO MODIFY ALIMONY CODED NO. 169 AND PLAINTIFF'S MOTION FOR ATTORNEY'S FEES CODED NO. 186
Many of the facts that give rise to the above two motions are not in dispute. The marriage between the parties was dissolved on August 4, 1995. A separation agreement entered into between the parties dated April 7, 1995, was approved by the court and incorporated by reference. Paragraph 15 of that agreement provided as follows:
15. SUPPORT OF HUSBAND AND WIFE
 It is agreed between the parties that they are in good health, and under no mental or physical disability and are fully capable of supporting him or her self and, in fact, prefer to do so. Therefore, Husband specifically waives any and all claim that he may have in or to alimony from the Wife.
 The Husband during his lifetime shall pay to the wife the sum of $118.00 per week as and for alimony. The obligation to pay alimony shall terminate upon the death of the Wife, her remarriage or cohabitation as defined by the statutes or on May 1, 2002. Except as stated herein, alimony is non-modifiable as to term.* Alimony payments shall commence the first day of the month following the sale of the marital residence as herein provided, and shall be prorated for any portion of the month in which the house sells. Until the sale of the marital residence, the husband shall continue to pay to the Wife the sum of $375 per week as and for alimony.
 Until the sale of the marital residence, the husband shall continue to pay to the Wife the of $375 per week as and for alimony.
 *The husband is currently unemployed and all orders have been based upon an anticipated reemployment salary of $67,000 per year. Any reemployment salary in excess of $67,000 shall be considered a change in circumstances.
The trial court made the following findings in the memorandum of decision dated August 4, 1995:
 At the time of the trial, Mr. Reed was laid off from his full time position at Chinipad, but was currently employed by them as a consultant. His financial affidavit reflected a thirteen week gross CT Page 8209 average weekly income of $1,296.15. The plaintiff's financial affidavit indicated that she was unemployed at the time of the trial. She testified that she was seeking full-time employment. Her employment income, prior to the trial, consisted of doing some product demonstrations for William-Sonoma, where she hadn't worked since Christmas time. She did have one job scheduled in April, and three at the end of May, which would consist of approximately four hours each at $10 an hour.
The plaintiff is presently employed at the Institute of Children's Literature. Her gross weekly income is $428. Her net weekly income is $331. She has liabilities totaling $45,718. Her weekly payments on those liabilities total $346. She has $15,019 in her Ridgefield checking accounting and $3498 in her 401K plan, and $850 in a security deposit.
The defendant's current gross weekly income is $1,607.69 or an annual income of $83,599.88. His net weekly income excluding deduction for his 401K plan is $1,180.78. He has $12,654.17 in bank accounts and $46,400.77 in deferred compensation plans. He owns a 1997 Nissan with a total value of $17,000. His only liability is to VISA with a balance of $187.27, which is paid at the end of each month.
On January 2, 1998, the parties entered into an agreement regarding various pending motions. That agreement provided in part as follows:
 Nor shall this Agreement serve to limit the rights of the plaintiff or the Defendant to file a motion to modify the amount of alimony based on any available legal theory, provided that any modification of alimony shall not result in any increased alimony obligation by the Defendant to the Plaintiff for any time prior to the dated of this Agreement. The bases from which to measure any change in financial circumstances of either party during the first such Motion To Modify Alimony may be the totality of all the information presented to the Court at the trial of April 7, 1995, any information referenced by the Court in its memorandum of August 4, 1995, including but not limited to the testimony of any witness, the parties' Separation Agreement, and the financial affidavits of the parties submitted in conjunction with the April 7, 1995 trial. The parties' argument as to which specific date should be used for comparison purposes in the first Motion To Modify Alimony proceeding, shall be left for the modification Court which entertains that motion. Neither the date CT Page 8210 of this Agreement nor the "Reopened" Judgment date shall serve as the date to which the Court should refer in determining any change of financial circumstances for purposes of modifying the amount of alimony.
 Neither party shall seek to modify the amount of alimony prior to January 1, 1998, and the plaintiff shall withdraw her current Motion To Modify Alimony dated September 17, 1997.
The court is using August 4, 1995, as compared to the current date in determining any change in financial circumstances for the purpose of modifying the amount of alimony. The court finds that there has been a substantial change in financial circumstances between August 4, 1995 and the current date.
The plaintiff has incurred the following total attorney's fees and costs which the court finds are fair and reasonable.
 5. The following hours/fees and costs have been billed by the undersigned to the Plaintiff, as follows:
 For the drafting, preparation and arguing of her Motion For Modification of Alimony, dated January 2, 1998, heard on July 6, 1998, the undersigned billed 29.77 hours through July 6, 1998, with fees totaling $7442.50. The bill for costs relating to Motion For Modification of Alimony, dated January 2, 1998 is $506.19.
 For the preparation and arguing of the defendant's Motion For Visitation, dated April 8, 1998, heard on April 16 and 17, 1998, the undersigned billed 14.5 hours in preparation for said hearing, and 19.00 hours for the two days for the hearing itself, along with morning/evening preparation time. The total fees billed in connection with this motion were $8,375. The bill for costs relating to the defendant's Motion For Visitation, dated April 8, 1998 is $217.05.
 For the preparation of the defendant's Motion For Contempt, dated April 8, 1998 and withdrawn with prejudice in open court on April 16, 1998, the fees and costs are reflected above, as the issues to be covered in defending against each motion were the same as for the Defendant's Motion For Visitation.
 The plaintiff's Motion to Modify Custody and Visitation, dated September 17, 1997, and the Motion For Contempt, dated April 22, 1998, have not yet been heard. The undersigned billed 8.5 CT Page 8211 hours for the preparation and drafting of the Motion To Modify Custody, dated September 17, 1997, with fees thus far totaling $212.50. The undersigned billed 4.77 hours for the preparation and drafting of the Motion For Contempt, dated April 22, 1998, with fees thus far totaling $1192.5.
The cost for filing the Motion To Modify Custody was $60.00.
 For the Motion For Contempt dated June 18, 1998, the undersigned billed 1.10 hours, with fees totaling $275.00.
 6. The cost for the transcript of Mr. Reed's deposition was $1589.84. It is impossible to allocate by percentage the cost of the transcript between the various post-judgment motions filed in this case. The transcript was used for the alimony modification, as well as for the matters settled in February 1998. Each segment of this case alone would have required the same deposition transcript.
 7. The total number of hours (for the above motions) is 69.99. The total bill for fees is $17,497.50. The total bill for costs is $783.24, without the transcript. The total bill for costs with the transcript is $2373.08. Total: $19,870.58.
 The above costs are separate and apart from the costs of $1700 which the Plaintiff testified to paying herself in connection with the hearings conducted on April 16 and 17, 1998.
The court enters the following orders regarding the plaintiff's motion to modify alimony: (a) alimony is increased from $118 weekly to $275 weekly effective the date this decision is filed; and (b) the parties are ordered to exchange copies of their federal and/or state income tax returns within fifteen days after such returns have been filed by registered mail, return receipt or certified mail, return receipt for so long as there is any outstanding alimony order or any arrearages thereto.
The court enters the following orders regarding the motion for attorney's fees: (a) for the drafting, preparation and arguing of the motion for modification of alimony, the court awards $2500 plus costs of $400; (b) for the preparation and arguing of the defendant's motion for visitation dated April 8, 1998, the court awards $2900 plus costs of $200; (c) the court is not awarding any amount regarding the plaintiff's motion to modify custody and visitation dated September 17, 1997, and the motion for contempt dated April 22, 1998, as those motions have CT Page 8212 not been heard. The issue of counsel fees on those motions is reserved to the court that hears those motions; (d) the court is also awarding $500 for the cost of the transcript of the defendant's deposition; and (e) the court is also awarding $500 for the cost the plaintiff incurred in having witnesses appear from out of state to testify at prior hearings.
All of the above amounts are to be paid in full by the defendant to the plaintiff by August 21, 1998. Interest is to run at the rate of 10 percent per annum effective August 21, 1998 for any unpaid amounts.
Axelrod, J.